UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MIGUEL CARABAJO,
     *on behalf of himself and all others similarly*
     *situated*,

                     Plaintiff,

                        **ORDER**
     -against-                   22-CV-04175-PKC-SJB

APCO INSULATION CO INC.,
KRESCO BEAMALINDRIC,

                   Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

     Plaintiff Miguel Carabajo ("Carabajo") commenced this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") case against Defendants APCO Insulation Co., Inc. ("APCO" or "APCO Insulation") and Kreso Bezmalinovic ("Bezmalinovic" and collectively, "Defendants") on July 15, 2022. (Compl., Dkt. No. 1).[1] Carabajo has moved for conditional certification of a FLSA collective of all current and former employees employed by Defendants as non-exempt laborers or similarly situated employees between July 15, 2016 and the present. (Mem. of Law in Supp. of Mot. for Conditional Collective Certification ("Pl. Mem."), attached as Ex. 13 to Mot. to Certify FLSA Collective Action dated Dec. 8, 2022 ("Mot. to Certify"), Dkt. No. 12 at 5). Defendants oppose the motion and have moved to strike Carabajo's declaration filed in support of his motion. (Mot. to Strike dated Dec. 29, 2022 ("Mot. to Strike"), Dkt. No. 16; Decl. of

_____

[1] Carabajo names the Defendants in his Complaint as "Apco Insulation Co Inc." and "Kresco Beamalindric." Defendants provide corrected spelling for both names in their motion papers, a change the Court adopts herein. (Decl. of Kreso Bezmalinovic dated Dec. 28, 2022 ("Bezmalinovic Decl."), attached as Ex. A to Decl. of Richard B. Zisken in Supp. of Defs.' Opp'n ("Zisken Decl."), Dkt. No. 14 ¶¶ 1, 4). The Clerk of Court is directed to amend the caption on the docket to reflect this corrected spelling.

Miguel Carabajo dated Dec. 2, 2022 ("Carabajo Decl."), attached as Ex. 3 to Mot. to Certify).  For the reasons stated below, the motion to certify is granted in part and denied in part, and the motion to strike Carabajo's declaration is denied.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The following facts are drawn from Carabajo's revised declaration, the Complaint, and the declarations submitted by Defendants in opposition to the motion.

Carabajo resides in Queens, New York.  (Compl. ¶ 10).  APCO Insulation is a building insulation and construction company with its principal place of business at 33-46 55th Street in Woodside, New York.  (*Id.* ¶¶ 13, 21, 37).  Bezmalinovic is the Vice-President of APCO.[2]  (Bezmalinovic Decl. ¶ 7).  From May 1, 2015 to November 30, 2021, Carabajo worked for APCO as an insulation prep and installer.  (Compl. ¶¶ 39–40).  Carabajo states that all employees were required to work 50 hours per week.  (Decl. of Miguel Carabajo dated Jan. 19, 2023 ("Revised Carabajo Decl."), attached as Ex. 2 to Reply in Supp. of Pl.'s Mot., Dkt. No. 18 ¶ 6).

Carabajo contends that he did not receive overtime pay for all the hours worked over 40 hours per week.  (*Id.* ¶ 22).  He was "required to come into work fifteen minutes before [he] could clock-in" and worked before he was permitted to clock in, but was not paid for that time.  (*Id.* ¶¶ 7, 23).  He also says that 30 minutes per day were automatically subtracted from his hours for a meal break, but his "meal breaks were only ten to fifteen minutes."  (*Id.* ¶ 24).  In March 2019, Defendants instituted a written policy that laborers would not be paid for a day if they did not clock in or clock out

---

[2] The Complaint alleges that Kreso Bezmalinovic is the "president, and/or owner, and/or day-to-day overseer" of APCO Insulation.  (Compl. ¶ 22).  However, Kreso Bezmalinovic avers that he is the vice-president and that a Nerina Bezmalinovic is the sole shareholder of APCO and serves as President.  (Bezmalinovic Decl. ¶ 7).

properly, which resulted in Carabajo missing payment for at least 8 overtime hours per month.  (*Id.* ¶¶ 25–27).

He also alleges that all of APCO's laborers—up to 50 such employees—in New York were subject to these policies.  (*Id.* ¶ 35 ("I believe that all the laborers working in New York suffered from these same illegal policies."); Compl. ¶ 29).  To demonstrate that the policies were common to other employees, Carabajo alleges that he had conversations with at least 10 others who performed similar work.  (Revised Carabajo Decl. ¶¶ 29–31, 34).  Eight named laborers—Felix, William, Sandro, Vinicio, Roberto, Alfredo, Jesus, and Miguel—told Carabajo in January 2020 that "it was Defendants policy to take out thirty minutes from [their] pay every day" and that "Defendants did not pay them all of their overtime hours because of clock-in/out issues."  (*Id.* ¶ 34).  Carabajo only provides the first names of these workers.[3]

Defendants submitted declarations from eight employees with the same or very similar first names as the eight individuals listed by Carabajo.  (Decls., attached as Exs. B–I to Zisken Decl., Dkt. No. 14).  Defendants contend that these are the "eight (8) co-workers that [Carabajo] identified by first name only in his Declaration."  (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. ("Defs. Mem."), Dkt. No. 15 at 8).  The declarations are virtually identical to each other and all but one are dated December 27, 2022.  (The

---

[3] Carabajo attests that "other security guards all complained about the [sic] not being paid for all the hours they worked."  (Carabajo Decl. ¶ 31).  This is the only reference to "security guards" in any of Carabajo's submissions.  APCO "does not and has not employed 'security guards.'"  (Bezmalinovic Decl. ¶ 18).

As such, Carabajo filed a reply brief and an opposition to the motion to strike on January 20, 2023, (Reply in Supp. of Pl.'s Mot. ("Pl. Reply"), Dkt. No. 18), with a revised declaration that replaced the reference to "security guards" with the word "laborers." (Revised Carabajo Decl. ¶¶ 25, 28, 31).  Defendants do not seek to strike the revised declaration.  (Reply in Resp. to Mot. to Strike ("Defs. Reply"), Dkt. No. 19 at 1).

remaining declaration—that of Wilian L. Lagoa—is undated.  (Decl. of Wilian L. Lagoa ("Wilian Decl."), attached as Ex. I to Zisken Decl., at 4)).  Each declarant states that he worked as a mechanical insulator, a position also known as an insulation prep and installer; that Carabajo was employed by APCO during the course of his employment; and he never discussed with Carabajo that "APCO Insulation failed to pay either of us some or all of overtime wages that were due to us" or "being deprived of our thirty (30) minute meal break."[4]  Each also states that he has never been underpaid by APCO Insulation and that to his knowledge, the same is true for his coworkers.  (Felix Decl. ¶ 14; *see also* Jesus Decl. ¶ 14; Sandro Decl. ¶ 14; Roberto Decl. ¶ 14; Miguel Decl. ¶ 14; Vinicio Decl. ¶ 14; Luis Decl. ¶ 14; Wilian Decl. ¶ 14).  The eight add that they were not coerced or threatened to make these declarations, were told that they did not have to provide a written statement, and were advised that there would not be any consequence to not signing.  (Felix Decl. ¶¶ 18–21; *see also* Jesus Decl. ¶¶ 18–21; Sandro Decl. ¶¶ 18–21; Roberto Decl. ¶¶ 18–21; Miguel Decl. ¶¶ 18–21; Vinicio Decl. ¶¶ 18–21; Luis Decl. ¶¶ 18–21; Wilian Decl. ¶¶ 18–21).

Carabajo asserts four causes of action: one FLSA claim, for failure to pay overtime compensation, (Compl. ¶¶ 59–66), and three NYLL claims, for failure to pay

---

[4] Decl. of Felix Lojano dated Dec. 27, 2022 ("Felix Decl."), attached as Ex. B to Zisken Decl., ¶¶ 4, 5, 12, 13; Decl. of Jesus Guzman dated Dec. 27, 2022 ("Jesus Decl."), attached as Ex. C to Zisken Decl., ¶¶ 4, 5, 12, 13; Decl. of Sandro L. Acevedo dated Dec. 27, 2022 ("Sandro Decl."), attached as Ex. D to Zisken Decl., ¶¶ 4, 5, 12, 13; Decl. of Roberto M. Lagua dated Dec. 27, 2022 ("Roberto Decl."), attached as Ex. E to Zisken Decl., ¶¶ 4, 5, 12, 13; Decl. of Miguel A. Toaliza Chamba dated Dec. 27, 2022 ("Miguel Decl."), attached as Ex. F to Zisken Decl., ¶¶ 4, 5, 12, 13; Decl. of Franklin Vinicio Cabuco-Tonato dated Dec. 27, 2022 ("Vinicio Decl."), attached as Ex. G to Zisken Decl., ¶¶ 4, 5, 12, 13; Decl. of Luis Alfredo Perez dated Dec. 27, 2022 ("Luis Decl."), attached as Ex. H to Zisken Decl., ¶¶ 4, 5, 12, 13; Wilian Decl. ¶¶ 4, 5, 12, 13.

overtime wages, pay earned wages, and provide accurate wage statements.  (*Id.* ¶¶ 67–80).

DISCUSSION

I.     <u>Conditional Certification of Collective Action</u>

    A.  <u>Merits of Conditional Certification Motion</u>

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  The statute requires employers to pay employees an overtime rate for time worked in excess of 40 hours in a given workweek of "not less than one and one-half times the regular rate at which [they are] employed."  *Id.* § 207.  Section 216(b) of FLSA provides a private right of action to an employee to recover overtime compensation from an employer who violates the Act's provisions.  The same section permits plaintiffs to have their case certified as a collective action on behalf of "themselves and other employees similarly situated."  *Id.* § 216(b).  Unlike Rule 23 class actions, a collective action is "opt in," meaning, to join the suit, a person must "give[ ] his consent in writing to become such a party" and file that consent "in the court in which such action is brought."  *Id.*

Courts engage in a two-stage inquiry to determine whether to grant a motion to certify a FLSA collective.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) ("[T]he district courts of this Circuit appear to have coalesced around a two-step method[.]" (footnote omitted)); *see, e.g.*, *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with

5

respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). "[T]he purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis omitted).

At this first step of this process, Carabajo's burden is minimal, but he must still make a "modest factual showing" that he and fellow employees were "victims of a common policy or plan that violated the law." *Id.* (quoting *Sbarro, Inc.*, 982 F. Supp. at 261). Key to this showing is whether the plaintiff "provide[s] actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014); *accord Myers*, 624 F.3d at 555. "This first stage determination is 'based on the pleadings, affidavits and declarations[.]'" *Bifulco*, 262 F.R.D. at 212 (alteration in original) (quoting *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members."). At the conditional certification stage, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013).

For example, courts in this Circuit have conditionally certified FLSA collectives based only on a plaintiff's detailed affidavit about his working conditions and those of his colleagues. *Miranda v. Gen. Auto Body Works, Inc*., No. 17-CV-4116, 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017) ("[T]here are numerous examples of courts in this Circuit granting conditional certification based on the pleadings and a single affidavit by the plaintiff."); *Hernandez v. Bare Burger Dio Inc*., No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.") (collecting cases); *see also Yi Mei Ke v. JR Sushi 2 Inc*., No. 19-CV-7332, 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) (certifying collective based on plaintiff's two affidavits that "adequately described conversations with other employees of JR Sushi concerning their wages"), *aff'd*, 2021 WL 465359, at *3 (Feb. 9, 2021).

Ultimately, however, although the inquiry "cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof." *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr*., 942 F.2d 1562, 1567 (11th Cir. 1991)). Consistent with this low standard of proof, "[a]t th[is] initial assessment stage, . . . the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa*, 715 F. Supp. 2d at 385 (quoting

*Francis v. A & E Stores, Inc.*, No. 06-CV-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008)).[5]

"Because the standard at the first stage is 'fairly lenient,' courts applying it 'typically grant[ ] conditional certification.'"  *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (alteration in original) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-CV-332, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).  Should the plaintiff make the requisite initial showing, he is entitled to conditional certification, and a court may "authorize a[] FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action."  *Gortat v. Capala Bros.*, No. 07-CV-3629, 2009 WL 3347091, at *8 (E.D.N.Y. Oct. 16, 2009), *report and recommendation adopted*, 2010 WL 1423018, at *1 (Apr. 9, 2010), *aff'd*, 568 F. App'x 78, 79 (2d Cir. 2014).

Following the distribution of the notice, the completion of any opt-in period, and any additional discovery, the Court undertakes the second stage of the two-part Section 216(b) inquiry.  "At the second stage, the district court will, on a fuller record, determine . . . whether the plaintiffs who have opted in *are in fact* 'similarly situated' to the named plaintiffs."  *Myers*, 624 F.3d at 555 (emphasis added).  "The action may be

---

[5] The modest factual showing is "'considerably less stringent' than the requirements for class certification under Rule 23."  *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (quoting *Avila v. Northport Car Wash, Inc.*, No. 10-CV-2211, 2011 WL 833642, at *3 (E.D.N.Y. Mar. 10, 2011)).  That is, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action" under Rule 23.  *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009) (quoting *Hens*, 2006 WL 2795620, at *3).

'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

Carabajo seeks conditional certification of a collective of "all current and former employees who worked for the Defendants as non-exempt laborers, or similarly situated employees regardless of job title and worked in the City of New York from July 15, 2016 to the present." (Pl. Mem. at 5).

"The threshold issue in deciding whether to authorize [collective] notice in an FLSA action is whether plaintiffs have demonstrated that potential [collective] members are 'similarly situated.'" *Sbarro, Inc.*, 982 F. Supp. at 261 (citing 29 U.S.C. § 216(b)). "[C]ourts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (collecting cases).

FLSA requires employers to pay employees for all time worked. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.223(a) (stating that "hours worked" under § 207 "include: (1) [a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) [a]ll time during which an employee is suffered or permitted to work whether or not he is required to do so"). In addition, FLSA requires employers to pay an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a). And FLSA requires that employees be paid at least a minimum hourly rate. *Id.* § 206(a)(1).

Carabajo has established that while employed by APCO he and other similarly situated employees were subject to a policy that runs afoul of FLSA: the practice of not paying for all hours worked—including overtime—when workers failed to clock in and out correctly. Carabajo alleges that Defendants instituted a written policy in March

2019 notifying him and other laborers that they would not be paid for a day's work if

they did not clock in or clock out properly.  (Revised Carabajo Decl. ¶ 25).  Two

documents contained the policy language.  *First*, an Employee Notice provides:

> [T]he punch in system put in place is not being utilized correctly by many
> of you. **This is unacceptable and will not be tolerated.**
>
> . . . **[T]here are NO exceptions to the following:**
>
> . . .
>
>> **Buddy Punch**: You must punch in and out correctly- per location,
>> per day. Meaning, if you first arrive at the shop- you are to punch in,
>> once you leave the shop you are to punch out, and once you arrive to
>> the job, you are to punch in again, and out once you leave that job. If
>> we are requesting you to be on multiple jobs - we will not deduct time
>> for travel, as long as you punch in and out upon arrival and exit. If
>> you don't follow this- you will **NOT BE PAID** for the day.
>>
>> **Technical Difficulties**: Any technical difficulties with the Buddy
>> Punch System are to be reported to either Rich or Adam
>> **IMMEDIETELY**, followed by the **OFFICE**. Again, you will not be
>> paid for the day if you do not do so.

(Employee Notice, attached as Ex. 4 to Mot. to Certify).  Second, the APCO's Employee

Agreement signed by "Miguel C" provides:

> If the Buddy Punch system is not used, you will not be paid. You must
> punch in when you get to a jobsite and when you leave from a jobsite.
>
> **IF YOU DO NOT PUNCH IN WHEN YOU GET TO A JOB
> SITE- YOU WILL NOT BE PAID.
> IF YOU DO NOT PUNCH OUT WHEN YOU LEAVE THE JOB
> SITE- YOU WILL NOT BE PAID.**

(Signed Employee Agreement dated Mar. 7, 2019, attached as Ex. 5 to Mot. to Certify).

Defendants do not dispute the existence of the policy or that it applied to Carabajo and

to all employees like him who worked as laborers.  (Defs. Mem. at 9–10).

This policy—of not paying employees for not properly recording time—is *per se*

illegal under FLSA.  "[O]nce an employer knows or has reason to know that an employee

is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) (noting that record keeping and appropriate payment obligations are employers' and cannot be transferred to employees to avoid paying overtime); *see also Tueros v. Urb. Health Plan, Inc.*, No. 21-CV-4525, 2022 WL 2752070, at *10 (S.D.N.Y. July 14, 2022) (granting conditional certification because an employer with "actual or constructive knowledge" must still pay an employee "even if an employee is at fault for not using features of the pay system that would otherwise ensure payment for all hours").

Defendants attempt to skirt liability for this plain FLSA violation in various ways. None provide a basis to deny conditional certification. As an initial matter, they attempt to justify the policy as necessary to "convey to the workers how important it is for them to clock in and clock out each workday." (Defs. Mem. at 9–10; Bezmalinovic Decl. ¶ 31). Whatever alleged purpose, salutary or not, that the policy intended to serve is irrelevant, and certainly does not excuse the policy's facial illegality.[6]

Defendants—not contesting that their employees worked overtime—then aver, in essence, their employees were never refused pay. (Defs. Mem. at 10 ("At no point in time did APCO Insulation ever refuse or fail to pay its employees, including but not limited to Plaintiff[.]")). It is not clear what Defendants mean precisely—they never

---

[6] The illegality is not cured by the fact that other provisions of the Employee Notice set forth the company's practice of paying for overtime and breaks, as APCO argues. (Defs. Mem. at 10–11). The penalty provision exists in the Employee Agreement separate and apart from the Employee Notice. And in any event, the provisions of the Notice stating that overtime would be compensated are not inconsistent with the penalty provisions. That is, APCO's policy appears to provide that overtime and breaks will be compensated, except if there is a failure to log time correctly. (The Notice does not say that APCO agrees to pay overtime notwithstanding any time logging failures).

unequivocally state that the policy was not enforced or deductions were not taken on the basis of it.  Nor do any of Defendants' eight declarants say that.  (If an employee believed that the policy was a lawful one, and was docked pay for not clocking in properly, then he would be under the mistaken belief that he was paid appropriately. But no matter how strong or good-faith his belief, the employee would still have a FLSA claim, be entitled to the docked pay, and the employer's policy would remain illegal.)

And even viewing Defendants' statements as denials that the written policy was ever enforced, Carabajo maintains that it was enforced against him and others. Carabajo states he did not receive payment for at least 8 overtime hours per month due to the policy and that conversations with other workers revealed Defendants "refused to pay [them] for all of the days we worked."  (Revised Carabajo Decl. ¶¶ 27, 31).  The merits of Defendants' denials—even if proven true in the end—cannot be resolved at conditional certification; the question is only whether Carabajo made his modest factual showing that there was an illegal policy, applied to him and others.  *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("To the extent that Defendants opposition relies on a detailed factual dispute about whether the Defendants [applied an illegal policy] . . . that inquiry is misplaced as those issues go to the merits of the case.") (collecting cases).  He has done that, and as a result, it is appropriate to grant the motion.

The existence of a written, illegal policy renders much of the back-and-forth in the parties' briefing largely irrelevant.  That is, Defendants dispute Carabajo's assertions that other employees were not paid, and argue that his declaration should be disregarded, in favor of the eight declarations that deny his allegations.  But the written policy alone is sufficient to warrant certification—the policy is illegal and it applied to all

employees.  So even if Carabajo's declaration is wrong—and he had no conversations with other employees—the common written, illegal policy would be sufficient to warrant certification.  *E.g.*, *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *13 (S.D.N.Y. May 5, 2016) ("Courts in this Circuit frequently find corporate documents of this nature probative of a common policy that justifies conditional certification of a company-wide collective.") (collecting cases); *Marshall v. R.J. Reynolds Tobacco Co.*, No. 7-227-CV-W, 2007 WL 7209939, at *2 (W.D. Mo. Oct. 26, 2007) (granting conditional certification based on defendant's written company-wide policies).

That being said, Carabajo's averments about his conversations with other laborers do provide additional bases to certify a collective.  Carabajo's affidavit indicates that Carabajo is similarly situated to laborers at APCO and that all of them were subject to a common wage policy of not paying overtime when employees failed to properly clock in and out, requiring work before clocking in, and not providing the full thirty-minute break subtracted from daily pay.  Carabajo indicates that he spoke to 10 other laborers, of which he names eight, and through these conversations and his own observations, learned that Defendants used a similar illegal pay policy.  (Revised Carabajo Decl. ¶¶ 29, 30, 34 ("Specifically, in or about January 2020, I remember working with Felix, William, Sandro, Vinicio, Roberto, Alfredo, Jesus and Miguel at a job located at 111 West 57th Street in Manhattan.  During this workday, I started complaining to them about how unfair it was that the Defendants didn't pay me for all of the overtime I worked.  Defendants' employees Felix, William, Sandro, Vinicio, Roberto, Alfredo, Jesus and Miguel then told me that it was Defendants policy to take out thirty minutes from our pay every day.  They also told me that Defendants did not pay them all of their overtime hours because of clock-in/out issues.")).

Defendants' declarations dispute these accounts with all eight employees contending they never were denied overtime pay. They all contain identical statements: (1) "Carabajo and I never discussed that APCO . . . failed to pay either of us some or all of overtime wages that were due to us"; (2) "[w]e never discussed being deprived of our thirty (30) minute meal break"; and (3) "APCO . . . has never docked my pay." (*E.g.*, Felix Decl. ¶¶ 13, 16). They stand, therefore, in stark contrast to Carabajo's account. But the inquiry at this stage is not whether Defendants' evidence is superior to Plaintiff's; instead, whether Plaintiff's allegations are sufficient to demonstrate a common illegal policy. Otherwise the collective certification inquiry—one directed solely to effectuate potential joinder of additional plaintiffs—would devolve into summary judgment—a process to evaluate whether claims are of sufficient merit to warrant trial. Carabajo has met his minimal burden—either through the written policy along with his allegations that the policy was enforced or through his statements about his conversations with other employees about an illegal wage-docking policy, or both. Defendants' declarations, even accepted as true, cannot defeat certification.[7] *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360, 2019 WL 5157024, at *9 (E.D.N.Y. Sept. 30, 2019) ("[T]his argument would require the Court to evaluate the parties' competing declarations. It is inappropriate for the Court to do so at this first stage of conditional certification.");

---

[7] It is also not obvious that these declarations, in fact, rebut Carabajo's allegations. Although Defendants identified eight employees with the same first names as the laborers Carabajo spoke with, it is not clear that these are the same individuals. Defendants never allege that the declarants were the only employees with the same first names who work at APCO. An assertion by Felix Lojano that he never discussed APCO's failure to pay with Carabajo, (Felix Decl. ¶ 13), is meaningless if Mr. Lojano is not the same "Felix" with whom Carabajo claims to have spoken. Defendants separately assert that Carabajo's inability to provide any last names makes it "very suspect that [he] has knowledge" of these employees' pay and their hours worked. (Bezmalinovic Decl. ¶ 16). But this again is a merits dispute unsuited for resolution at this stage.

*Marin v. Apple-Metro, Inc.*, No. 12-CV-5274, 2014 WL 7271591, at *2 (E.D.N.Y. Dec. 18, 2014) ("[C]ourts in this Circuit regularly conclude that competing declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process." (quotations omitted)); *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 22 (W.D.N.Y. 2020) ("To the extent that these declarations and [policies] serve simply to challenge Mercier's allegations of unpaid overtime and his and Szczublewski's allegations about directives from Sherry, Vance, and Kirchner, the Court will not consider them. Plaintiffs are correct that at this stage, district courts in the Second Circuit have refused to gauge the relative weight of competing declarations."); *Fasanelli*, 516 F. Supp. 2d at 322 ("[T]he initial [collective] certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproven allegations. Further, the Court is not being asked for a determination on the merits and the Defendant will have another opportunity to object to . . . certification after discovery.").[8]

Defendants make one other argument. Carabajo identifies himself as an "insulation prep and installer" but otherwise labels other members of the collective as "laborers." (Revised Carabajo Decl. ¶¶ 5, 30). Defendants argue that this difference is fatal to the "similarly situated" inquiry, because the position of "laborers" is "non-existent" at APCO. (Bezmalinovic Decl. ¶ 20). The argument misapprehends Carabajo's use of the term "laborer"—not as a formal job title, but as a colloquial term for

---

[8] Likewise, Defendants' contentions and proof that Carabajo was paid all he was entitled to, never inappropriately docked pay, or has overstated his hours, (Defs. Mem. at 10; Bezmalinovic Decl. ¶¶ 26, 33–41), go to the ultimate merits and cannot be considered at this junction. Defendants can use these arguments and evidence at summary judgment, if such a motion is appropriate.

employees who performed "similar work" to him.  (Revised Carabajo Decl. ¶¶ 28–29).

Indeed, Defendants' employees contend that they worked at APCO at the same time as

Carabajo, (*e.g.*, Felix Decl. ¶ 12), and he was classified as a mechanical insulator.  (*E.g.*,

*id.*).  Yet, none claim that they performed different job duties from Carabajo or that they

were not also mechanical insulators.

Defendants' argument is, at best, one that implicates the form of the notice.  And

on this point the Court agrees with Defendants.  Carabajo has not disputed that he was a

mechanical insulator; has not demonstrated that the term laborers would encompass

additional individuals or was a separate classification at APCO; and has not shown that

the other individuals with whom he spoke were employed in any other capacity than as a

mechanical insulator.  As such, the notice to all non-exempt employees at APCO is not

appropriate.  While the written policy of docking overtime may have applied company-

wide, Carabajo has only demonstrated its enforcement to mechanical insulators.  As

such, the collective and its attendant notice shall be limited to non-exempt mechanical

insulators or individuals who worked as an insulation installer (a term that captures the

same job duties as Plaintiff, even if not the same formal title).  *See, e.g.*, *Pettenato v.*

*Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 282 (S.D.N.Y. 2019) (conditionally

certifying a collective notwithstanding the various job titles defendant used

"interchangeably" to refer to plaintiffs); *Taveras v. D & J Real Est. Mgmt. II, LLC*, 324

F.R.D. 39, 44 (S.D.N.Y. 2018) ("[D]ifferent job titles may be included within a

conditional collective if there is evidence that plaintiffs may be similarly situated as to a

common policy to violate the FLSA.") (collecting cases).

B. Notice Period

Carabajo requests a six-year notice period for the collective.  (Pl. Mem. at 16–17).
He offers no argument as to why such a period is appropriate, other than to say courts
reject requests to limit the notice period.

But the recent trend "is to 'approve three-year notice periods to avoid the
confusion caused by notifying plaintiffs who potentially have two disparate claims with
different statutes of limitations, along with the inefficiency of providing notice to
plaintiffs whose claims may well be time-barred.'"  *Gurrieri v. County of Nassau*, No.
16-CV-6983, 2019 WL 2233830, at *8 (E.D.N.Y. May 23, 2019) (quoting *Mongiove v.
Nate's Corp.*, No. 15-CV-1024, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016)); *see
also McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011)
("[W]hile '[n]otice to all former employees, going back six years, has been authorized
where plaintiffs seek relief under both the FLSA and the New York Labor Law,' the
growing trend in this district appears to be limiting the notice period to three years."
(second alteration in original) (citations omitted)).  As some district courts have noted,

> "[i]t would be confusing to employees who are ineligible for the FLSA opt-
> in [collective] to receive the opt-in notice, which does not relate to any state
> law claims. Further, while a class for the state law claims may someday be
> certified, it is an opt-out, not an opt-in, class, so there is no danger of claim
> lapse.

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (emphasis removed);
*see also Gurrieri*, 2019 WL 2233830, at *8.  The Court agrees with this reasoning and
finds that here a six-year notice period is inappropriate.

As to whether a two-year or three-year notice should apply under FLSA, "at the
conditional certification stage, a plaintiff need not provide evidence sufficient to
establish willfulness in order for the three-year period to be utilized for notification

17

purposes." *Slamna v. API Rest. Corp.*, No. 12-CV-757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013). "If appropriate, this Court can revisit any statute of limitations questions at a later stage." *Raimundi v. Astellas U.S. LLC*, No. 10-CV-5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27, 2011). As a result, at this stage, it is appropriate to permit conditional certification for a three-year period. Should Carabajo fail to demonstrate that Defendants acted willfully, employee claims can be limited.

The three-year period solely for notice purposes should commence from the date of the filing of the Complaint looking backwards and not the date of this Court's order through the present. *See, e.g.*, *id.* (granting a notice period from three years prior to the filing of the complaint through the entry of the Court's order granting conditional certification); *Lubas v. JLS Grp., Inc.*, No. 18-CV-6611, 2020 WL 4210754, at *12 (E.D.N.Y. July 22, 2020) (same).

C.  Discovery of Names and Contact Information of Potential Collective Members

Carabajo asks the Court to order Defendants to produce the names and contact information of potential collective members, including "names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers (including cell phone numbers), social security numbers, and dates of employment." (Pl. Mem. at 15–16).

Most of this information is unobjectionable. "Courts in this district routinely allow Plaintiffs to receive contact information of putative collective members, including last known addresses, telephone numbers, and emails." *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 96 (S.D.N.Y. 2020). Courts also allow for the production of dates of employment, *Yi Mei Ke*, 2021 WL 148751, at *10, and rates of pay, *Jeong Woo Kim*, 985 F. Supp. 2d at 452.

On the other hand, "[t]he request to compel production of social security numbers is within the Court's sound discretion," *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011), but it is not routine.   "While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice."   *Id.*   Carabajo has not yet demonstrated that social security numbers are necessary to locate potential collective members.

Therefore, Defendants shall produce names, titles, compensation rates, last known mailing addresses, email addresses, all telephone numbers, and dates of employment for potential collective members but shall not produce social security numbers at this time.   *E.g.*, *Ruiz v. Truffa Pizzeria & Wine Room Corp.*, No. 20-CV-8645, 2021 WL 568249, at *7 (S.D.N.Y. Feb. 15, 2021); *Hwangbo v. Kimganae, Inc.*, 2021 WL 2843839, at *8 (E.D.N.Y. June 1, 2021), *report and recommendation adopted*, Order (July 7, 2021).

D.   Content and Distribution of Notice of Pendency

Carabajo asks the Court to approve his proposed notice, which includes a 60-day opt-in period.   (Pl. Mem. at 16–17; Proposed Notice, attached as Ex. 6 to Mot. to Certify).   "Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain."   *Yi Mei Ke*, 2021 WL 148751, at *12 (alteration in original) (quoting *Lee v. ABC Carpet & Home*, No. 00-CV-984, 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008)).

> To that end, the notice generally should contain[ ] "a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries."

*Id.* (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012)). Courts in this District have also found that "collective action notice[s] must include a statement informing potential opt-in plaintiffs of any fee arrangement, to which the named plaintiffs and their counsel agreed and which may impact the opt-in plaintiffs' recovery." *Li Ni v. Red Tiger Dumpling House Inc*, No. 19-CV-3269, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020). A sixty-day opt-in period is "common" in this Circuit. *Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020).

Defendants raise a number of concerns regarding the Proposed Notice. (Defs. Mem. at 15–16). These include the fact that the notice language is "unnecessarily biased," the notice contains the case caption, and the notice fails to fully explain the consequences of joining to opt-in plaintiffs. (*Id.*). The Court also notes that the notice incorrectly spells the name of Individual Defendant Bezmalinovic. *Supra* n.1. The parties are directed to meet and confer to discuss any changes to the proposed notice and provide a revised proposed notice to the Court for review by June 23, 2023.[9]

Carabajo requests that notice be sent via mail, email, and text message. (Pl. Mem. at 13–14; *see also* Proposed Email, attached as Ex. 8 to Mot. to Certify; Proposed

---

[9] Several of the objections raised by Defendants—for example, to including the caption of the case—are not consistent with circuit practice. (Indeed, the cases cited to support their objections are from outside the Second Circuit).

Text Message, attached as Ex. 9 to Mot. to Certify).  Such dissemination via mail, email, and text message is appropriate.  *Qiang Lu*, 447 F. Supp. 3d at 97; *Yi Mei Ke*, 2021 WL 148751, at *14.  Carabajo may also send a reminder notice via mail, email, and text message halfway through the opt-in period.  (Pl. Mem. at 12–13); *Qiang Lu*, 447 F. Supp. 3d at 98; *Yi Mei Ke*, 2021 WL 148751, at *15.

Carabajo requests that the Court require Defendants to post notice and the accompanying consent forms at their business locations.  (Pl. Mem. at 12).  The Court finds that this, too, is appropriate.  *Whitehorn*, 767 F. Supp. 2d at 452 ("For the duration of the 60 day period, Defendants shall post a copy of the notice in each of Defendants' three restaurants, in a conspicuous place where putative plaintiffs are likely to see it."); *Yi Mei Ke*, 2021 WL 148751, at *14 (same).

Finally, the Court finds it appropriate to grant Carabajo's request for the notice and reminder notice to be sent in both English and Spanish.  *Yi Mei Ke*, 2021 WL 148751, at *14 ("Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" (quoting *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016))).

E. Equitable Tolling

Carabajo argues that the FLSA statute of limitations should be tolled until the opt-in notice can be sent to potential plaintiffs.  (Pl. Mem. at 17–18).  "Ordinarily, the statute of limitations in an FLSA collective action 'continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit.'"  *Yi Mei Ke*, 2021 WL 148751, at *15 (quoting *Whitehorn*, 767 F. Supp. 2d at 449).  "In such a case, equitable tolling may be warranted to avoid 'inequitable circumstances' where [']plaintiffs have acted with reasonable diligence in

pursuing their claims,' but where 'a substantial number of class members may now be time-barred through no fault of counsel or the class representative.'" *Id.* (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)). "Equitable tolling is appropriate 'only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Qiang Lu*, 447 F. Supp. 3d at 98 (alteration in original) (quoting *Vasto*, 2016 WL 2658172, at *16). Carabajo's arguments "do not conform to the equitable tolling doctrine as described by the Supreme Court and the Second Circuit" because Carabajo's generic request does not attempt to establish any of the necessary factors for tolling and relies solely on a vague allegation of "delay," which is insufficient. *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 659 (S.D.N.Y. 2017). Carabajo also does not demonstrate that any putative members' claims will be time barred to substantiate his request for equitable tolling. As such, the Court denies this request. *See, e.g.*, *id.*; *Yi Mei Ke*, 2021 WL 148751, at *15.

## II.   Motion to Strike

Along with opposing Carabajo's collective certification motion, Defendants filed a motion to strike Carabajo's declaration submitted in support. (Mot. to Strike). In response, Carabajo submitted a revised declaration that addressed Defendants' concerns regarding a reference to "security guards" and a lack of certification that the declaration was translated into Carabajo's native Spanish. (Revised Carabajo Decl.; Defs. Mem. at 13). Defendants do not seek to strike the revised declaration. (Defs. Reply at 1). As such, the original declaration is no longer operative, the Court has not relied on it in deciding this motion, and the motion to strike is therefore denied as moot.

<u>CONCLUSION</u>

For the foregoing reasons, Carabajo's motion to conditionally certify a collective FLSA action is granted in part and denied in part.  The collective extends to current and former non-exempt mechanical insulators or individuals who worked as an insulation installer for Defendants in New York City for a three-year period.  In addition, the revised proposed notice to be sent to the potential opt-in parties should be submitted to the Court for final approval by June 23, 2023.  Other requests regarding the notice form, distribution, and other matters are resolved as detailed above.  Defendants' motion to strike is denied.

SO ORDERED.

*/s/Sanket J. Bulsara* June 9, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

23